[Civil No. 3929.   Filed February 28, 1938.]

[76 Pac. (2d) 749.]

SUNRISE GOLD MINING COMPANY, INC., a Corporation, Appellant, v. BRAYTON COMMERCIAL COMPANY, a Corporation, Appellee.

Mr. Henry H. Miller, for Appellant.

Messrs. Clark & Clark and Mr. Joseph C. Furst, for Appellee.

LOCKWOOD, J.—Sunrise Gold Mining Company, Inc., a corporation, hereinafter called defendant, was the owner of certain mining claims situated in Maricopa county, Arizona. On September 15, 1933, it executed a lease and option of purchase of the claims in favor of C. W. Mitchell, hereinafter called the lessee. On the 16th of December, 1933, defendant consented that the lessee could enter upon the premises and begin operations, and in accordance with such consent he did begin operations on a small scale a few days thereafter, and with regular shifts of miners on January 4, 1934. The Brayton Commercial Company, a corporation, hereinafter called plaintiff, was engaged in the merchandising business, and between January 1, 1934, and June 8, 1935, sold and delivered to the lessee goods, wares, and merchandise to be used in and about the operation of the mining claims aforesaid, to the value of $6,734.21. On February 15, 1934, the president of the defendant caused a notice of nonliability, as provided for in section 2029, Revised Code 1928, to be recorded in the office of the county

recorder of the county where the claims were located, and posted one copy of the notice at the shaft going down into the mine, one copy at the boarding house on the premises, and delivered a copy to the plaintiff, by leaving the same at its place of business in Wickenburg, Arizona. Thereafter, the goods not having been paid for by any person, the plaintiff filed a notice and claim of lien upon the mining claims in question in proper form and duly verified, and within the time required by the statute for the filing of liens, for the value of said goods, and within the statutory period commenced this action to foreclose the lien. Judgment was rendered in favor of plaintiff for the amount sued for, and for a foreclosure of the lien, whereupon this appeal was taken.

There is but one question which it is necessary for us to consider in determining this case, and that is, whether or not the filing and posting of the notice of nonliability above referred to prevented the plaintiff from claiming a lien against them. This involves the construction of several sections of our Code. Chapter 46, article 2, section 2020 et seq., Revised Code 1928, deals with liens of mechanics and materialmen. Sections 2028 and 2029 of this article read, so far as material to the present case, as follows:

"§ 2028. *Lien on mines and mining claims.* Miners, laborers and persons who furnish materials or merchandise of any kind, designed for or used in or upon any mine, or mining claim, and to whom any sum is due for such labor, material or merchandise, shall have a lien upon the same for such sums as are unpaid. Such lien shall attach whenever the labor was performed, or material or merchandise furnished: . . . Under or by virtue of a contract between the person performing such labor, or furnishing said material or merchandise, and the lessee of said mine or mining claim, or his contractor, where the lease from the owner to the lessee permits the lessee to develop or work said mine or mining claim; or under or by virtue

of a contract between persons performing said labor, or furnishing said material or merchandise, and any person having an option to buy, or contract to purchase said mine or mining claim, from the owner thereof, where the option or contract permits the person to go upon the mine or mining claim, and to work or develop the same.''

''§ 2029. *'No lien'* notice by owner not operating. The provisions of the foregoing section shall not apply and the owner of a mine or mining claim will not be responsible for any debts where said mine or claim is worked under lease, bond, or option, by a person from the owner thereof, when the owner shall have conspicuously posted at the collar of all working shafts, tunnels, entrances to the mine and to all boarding houses, on or before the day the lessee or those working said claim under bond, lease or option to buy, begin operations, and file for record in the office of the county recorder of the county within which such mine or mining claim is situated, within thirty days from the date of such lease, bond or option, a notice that said mine or claim is not being operated by the owner, that the owner will not be liable for labor, materials or merchandise furnished to or performed in the operation or development of said mine or mining claim, and that said mine or mining claim will not be subject to a lien therefor, referring to the contract, and particularly describing the mining claims.''

It is admitted that from the foregoing statement of facts and the sections of the Code just quoted plaintiff was entitled to a lien on the mining claims in question for the material which it is admitted that it furnished to be used upon the claims, unless the recording and posting of the notices above referred to on February 15, 1934, was a sufficient compliance with the provisions of section 2029, *supra.* That it did not comply with those provisions literally is obvious. The statute says that the ''no lien'' notice must be posted ''on or before the day the lessee or those working said claim . . . begin operations,'' and that it must be filed for record ''within thirty days from the date of such lease, bond

or option.'' The lease was dated September 15, 1933, and operations thereunder began in December, 1933, while the ''no lien'' notice was neither posted nor recorded until February 15, 1934.

It is the contention of defendant, however, that the true construction of the statute is that a ''no lien'' notice may be posted and recorded at any time, and the only effect of delaying it beyond the time set forth in the statute is to limit the lien to merchandise sold and delivered before the posting and recording. His argument in this respect substantially is that the only purpose of the posting and recording is to give notice to prospective vendors of material or merchandise of the intention of the owner that liability shall not attach to the property, and, therefore, if the notice is actually given at any time and in any manner, under a liberal and equitable construction of the section the lien should not attach for goods sold *after the vendor has actual notice of the intent of the owner*. No cases have been cited to us covering a lien statute like ours, but defendant presents a number of authorities dealing with cases where recording or posting is required to protect certain rights, and which hold that as long as a party has actual notice of the facts, a failure to post or record a notice of such facts which is merely for the purpose of giving constructive notice is immaterial.

We think there is a vital difference between the cases cited by defendant and the present situation. In those cases, the party who had failed to record the instrument in question actually had certain rights not dependent on the recording, and such recording was required only to give notice to others that the right existed. For instance, if a man has an unrecorded deed to a piece of property he is the owner of the property, and the recording does not in any manner add to his actual title. The only effect of a failure to

record is that he is estopped from asserting such rights as against others which may have arisen in favor of other *bona fide* purchasers or encumbrancers who did not have notice of his right. It is obvious that since such a recording is merely for the purpose of giving notice of a certain right already existing that if the parties have actual notice of such a right, the purpose of the recording statute is fulfilled, and the failure to record is, as to such parties, immaterial. In the present case, however, the situation is very different. The materialman has a lien given him by section 2028, *supra,* under the circumstances set forth in the section, and the claims are subject, as a matter of law, to his lien without the necessity of his doing anything until the time comes for filing his claim of lien in the usual manner.

The owner has no existing exemption from the lien. The only manner in which such a right can arise is by his taking affirmative action, to wit, that set forth in section 2029, *supra,* and unless and until he takes such action it is not a case of his having a right of which the other party has no notice. *He has no rights.* If, therefore, he desires not merely to give notice of an existing right but to create the right, he may do so only by complying strictly with the statute which gives it, and this it is admitted he has not done. Such a construction of the statute is free from many evils which would arise should we adopt the meaning contended for by defendant. If the only purpose of the statute is that the vendor of the merchandise may have notice that the owner wishes to exempt the property from lien, such notice, in logic, not only need not be given in the *time* prescribed by the statute, but need not follow the *manner* set forth therein. Ordinary notice to the prospective lienor given in a casual manner on the road would be just as effective as the formal posting and recording as required by the statute.

Further, the materialman before each specific sale of goods must re-examine the records to see if a "no lien" notice has been filed since his last sale, in order to be protected. It is obvious that such a situation would open the door wide to much litigation and, perhaps, perjury; while on the other hand, if a strict compliance with the statute is required, most of these difficulties are obviated.

For the foregoing reasons we are convinced that the true interpretation of sections 2028 and 2029, *supra,* and that which the legislature must have intended when it enacted them, was that time was of the essence of the sections, and that a failure to record and post the "no lien" notice not only in the manner but in the time set forth by section 2029, *supra,* was a waiver by the owner of any right which he might have to protect his property from lien, so that laborers and materialmen knowing that the "no lien" notices had not been posted and recorded, as required by the statute, might safely furnish their labor and merchandise, relying on the right of lien against the property itself.

The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.