637 P.2d 1079

Ralph GREAIG and Ernest Newman, Plaintiffs-Appellants,

v.

PARK WEST CONSTRUCTION COMPANY and Aetna Casualty and Surety Company, Defendants-Appellees.

No. 1 CA–CIV 4763.

Court of Appeals of Arizona, Division 1, Department B.

Oct. 6, 1981.

Rehearing Denied Nov. 18, 1981.

Review Denied Dec. 15, 1981.

Atmore Baggot, Phoenix, for plaintiffs-appellants.

Gallagher & Kennedy by Michael L. Gallagher and J. Ruth Sproull, Phoenix, for defendants-appellees.

## OPINION

JACOBSON, Judge.

This appeal requires the determination of whether employees of a subcontractor gave both timely and sufficient notice to the contractor so as to subject the contractor's payment bond to liability for the alleged non-payment of their wages.

This action was instituted by appellants Ralph Greaig and Ernest Newman against Kenneth A. McIntyre and his wife, doing business as Sunshine Concrete, H. B. Associates, Arizona Millwork and appellees Park West Construction Company (Park West) and Aetna Casualty and Surety Company (Aetna) to recover overtime wages allegedly unpaid by their former employer, Sunshine Concrete.

On cross-motions for summary judgment, the trial court entered judgment in favor of Park West and Aetna against appellants. Appellants have appealed. Sunshine Concrete, H. B. Associates, and Arizona Millwork are not parties to this appeal.

The facts as presented to the trial court are that Greaig and Newman were employed in 1977 by McIntyre, a licensed cement contractor doing business as Sunshine Concrete, to build forms in which to pour concrete.

On August 15, 1977, Sunshine Concrete was awarded a subcontract by Park West in connection with the construction of a large, commercial structure upon which Park West was the general contractor. Pursuant to A.R.S. § 33–1003, the owner required Park West to post a payment bond in order to avoid the mechanic's lien provisions of A.R.S. § 33–981. Aetna appears as surety on that bond.

Apparently, in order for Sunshine Concrete to fulfill its subcontract, both Greaig and Newman were required to perform overtime work. Greaig and Newman alleged that an oral agreement was entered into between them and their employer, Sunshine Concrete, that they would defer the compensation for overtime until completion of the job. According to depositions, Greaig terminated his employment with Sunshine "early in December" of 1977 and Newman "left sometime earlier than that."[1] Sunshine Concrete's work under the sub-contract was completed in "the middle or end of January," 1978. Greaig and Newman alleged they were never paid by Sunshine Concrete for the overtime work.

On January 23, 1978, Greaig signed a "Notice and Claim of Lien" naming Arizona Millwork Company or H. B. Associates as the owners of the property upon which the construction took place and purported to place a lien on that real property. Park West as general contractor was not named in this document. This Notice and Claim of Lien was duly recorded and a copy mailed to Arizona Millwork Company. Arizona Millwork in turn forwarded the copy to Park West, which in turn sent the copy to Sunshine Concrete. Sunshine Concrete apparently disputes that any money is owed to Greaig or Newman.

On February 14, 1978, Newman signed a Notice of Claim and Lien in the same form as Greaig. The record does not show that this claim of lien was ever recorded and there was no evidence that it ever came to the attention of Park West.

---

1. Affidavits filed by Greaig and Newman in connection with the motion for summary judgment stated that Greaig terminated his employment with Sunshine Concrete on November 20, 1977 and that Newman last worked for Sunshine Concrete on November 12, 1977.

On March 27, 1978, Greaig and Newman filed this action. There is no contention that Greaig or Newman had any direct contractual rights against Park West or Aetna and the liability of Park West and Aetna arise solely by reason of the payment bond posted by Park West pursuant to A.R.S. § 33–1003. Park West and Aetna's motion for summary judgment was based upon the failure of Greaig and Newman to comply with the statutory conditions precedent for imposing liability under this bond.

Normally, every person who performs labor or furnishes material in the construction of any building, may impose a lien thereon for the labor performed or material furnished. A.R.S. § 33–981. However, this right to subject the property to a lien is limited by the provisions of A.R.S. § 33–1003.

A.R.S. § 33–1003 provides in part:

Every owner of land . . . who enters a contract requiring any person to perform labor, or to furnish materials . . . in the construction . . . of any building . . . may avoid the lien provisions of § 33–981 . . . by requiring the person with whom he contracts to furnish a payment bond prior to or at the time of execution of such contract.

\* \* \* \* \* \*

The bond shall be conditioned in accordance with the provisions of § 34–223, subsections A and B.

A.R.S. § 34–223 in pertinent part provides that:

[A]ny such claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship express or implied with such contractor shall have a right of action upon such payment bond *upon giving written notice to such contractor within ninety days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made . . . .* (Emphasis added).

It is basically the contention of Park West and Aetna that as to Greaig the "Notice and Claim of Lien" filed by him did not furnish the notice required by A.R.S. § 34–223 and that as to Newman, if notice can be supplied by filing suit, the notice was untimely.

Since there is no evidence that Park West had notice of the Newman claim until suit was filed, we will first deal with Greaig's claim as to which arguably Park West received notice. As to Greaig's claim we must initially determine whether a Notice and Claim of Lien which does not name the general contractor and which only fortuitously comes to the attention of the general contractor is sufficient to comply with the notice requirements of A.R.S. § 34–223 that "written notice" be given to the "contractor within ninety days from the date on which such claimant performed the last of the labor . . . ."

In arguing that the Notice and Claim of Lien filed by Greaig constituted sufficient compliance with the statute, Greaig relies primarily on the case of *Western Asbestos Co. v. T. G. K. Construction Co., Inc.*, 121 Ariz. 388, 590 P.2d 927 (1979). In *Western Asbestos*, the Arizona Supreme Court was required to determine whether the notice requirements of A.R.S. § 34–223 were complied with by a letter sent to the general contractor by a supplier of a subcontractor which enclosed invoices of the material supplied to the sub-contractor and which stated "if there is some way in which you can help us get payment for the material furnished, we would be very grateful." *Id.* at 389, 590 P.2d at 928. Since the letter was not sent by registered or certified mail as required by A.R.S. § 34–223, the first issue decided by the court was whether this variance from the statute was fatal. In holding that it was not, the supreme court quoted the United States Supreme Court case of *Fleisher Engineering & Construction Co. v. United States*, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940), which held that the statutory registered mail provision:

was to assure receipt of the notice, not to make the described method mandatory so

as to deny right of suit when the *required written notice* within the specified time had actually been given and received. (Emphasis added by us).

*Id.* at 19, 61 S.Ct. at 83, 85 L.Ed. at 15.

Since Park West and Aetna do not assert any invalidity of the Greaig notice based upon the failure to send it by registered or certified mail, this holding is not particularly helpful in this case.

The second issue presented in the *Western Asbestos* case was whether the letter met the requirements of the statute that "the writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill." *Bowden v. United States*, 239 F.2d 572, 577 (9th Cir. 1956), cert. denied 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957). Under the particular facts, the *Western Asbestos* court found compliance with that requirement. However, here, the Greaig Notice and Claim of Lien was neither sent by the claimant to Park West nor was Park West mentioned in that notice. We fail to see how, under the facts presented here, this document put Park West on notice that Greaig was looking to Park West for the payment of Sunshine Concrete's debt. If anything, the notice appears to indicate that Greaig is looking to the sale of land sought to be charged under his lien for satisfaction of his claim.

Greaig seems to extrapolate from *Western Asbestos* a holding that anytime the contractor obtains knowledge, no matter how informal, that there exists an unpaid laborer or materialman on the construction job, the contractor and its surety are liable on their bond. We do not read *Western Asbestos* so broadly. Moreover, well settled Arizona law is to the contrary.

Arizona has long adhered to the rule that where a right is created by statute, which right did not exist at common law, enforcement of that right must be in accordance with the provisions of the statute creating

the right. *See Moody v. Lloyd's of London*, 61 Ariz. 534, 152 P.2d 951 (1944). There is no doubt that the imposition of mechanic's liens and their avoidance by posting of a payment bond are statutorily created rights, unknown at common law.

In recognition of this rule and a rejection of the Greaig's "actual knowledge" argument, the case of *Sunrise Gold Mining Co., Inc. v. Brayton Commercial Co.*, 51 Ariz. 301, 76 P.2d 749 (1938), dealt with the issue of whether a mine owner who gave actual notice to potential lienors of his intent not to subject his mine to liens, but did not strictly comply with the "no lien" statute, was entitled to the protection of the statute. The court stated:

> The owner has no existing exemption from the lien. The only manner in which such a right can arise is by his taking affirmative action, to wit, that set forth in section 2029, *supra*, and unless and until he takes such action it is not a case of his having a right of which the other party has no notice. *He has no rights.* If, therefore, he desires not merely to give notice of an existing right but to create the right, he may do so only by complying strictly with the statute which gives it. . . . (Emphasis in original).

*Id.* at 306, 76 P.2d at 751.

Likewise, here, Greaig has no existing right in and to the payment bond, he must create that right by complying with the statutory prerequisites giving rise to that right.

The statutory prerequisites for maintaining suit upon a payment bond by a claimant under A.R.S. § 34–223 are aptly set forth in *Bowden v. United States, supra*, interpreting the companion section of the Federal Miller Act:[2]

(1) The written notice is a condition precedent to the right of a claimant to sue on the bond;

(2) the written notice must be sent or presented to the prime contractor by or under the authority of claimant; and

2. In *Western Asbestos Co. v. T. G. K. Construction Co., Inc., supra,* our supreme court noted that A.R.S. § 34–201, *et seq.* was modeled after the Federal Miller Act, 40 U.S.C. § 270a, *et seq.,* and cases interpreting the Miller Act are persuasive in interpreting Arizona's act.

(3) the written notice must inform the prime contractor expressly or by implication that the claimant is looking to the contractor for payment of the claim.

 We find the Greaig Notice and Claim of Lien statutorily insufficient in two areas: (1) The notice was not sent to or presented to Park West by Greaig or his representative (there is no contention that Arizona Millwork was authorized by Greaig to send the copy to Park West) and (2) the notice did not inform Park West that Greaig is looking to Park West for payment of the Sunshine Concrete's debt. (Park West was not even named in the notice).

We therefore hold that the Greaig Notice and Claim of Lien did not comply with the statutory conditions precedent to maintaining a suit against Park West and Aetna under the payment bond.

 However, both Greaig and Newman argue that the suit filed by them on March 7, 1978 complied with the notice requirements. Both admit that this action was brought more than 90 days from the last date either performed labor on the construction project. They argue, however, that the notice was timely for two reasons: (1) the 90 day period did not begin to run until Greaig and Newman had an expectation of payment (at the completion of the job in January, 1978), and (2) Park West and Aetna must show prejudice by the delay in filing claims. We reject both contentions.

The simple answer to the argument that the statutory period begins to run when the payment is due, is that the legislature did not so provide. The clear and unambiguous language of A.R.S. § 34–223 is that the notice must be given "within ninety days from the date on which such claimant performed the last of the labor ... for which such claim is made." If the legislature had wanted to use other dates or other times within which the notice was to be given, it was at liberty to do so. However, we can-

not ignore the clear and unambiguous language of the statute nor can we disregard the plain limitations on liability which the legislature imposed by A.R.S. § 34–223. *See, J. W. Bateson Co. v. Board of Trustees,* 434 U.S. 586, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978).

As to the lack of prejudice argument, the case law interpreting the corresponding provision of the Federal Miller Act is uniform in holding that both the written notice and its timely filing are conditions precedent to imposition of liability upon a payment bond. *United States v. Seaboard Surety Co.,* 437 F.2d 37 (5th Cir. 1971); *United States, Etc. v. United States Fidelity and Guaranty Co.,* 422 F.2d 597 (4th Cir. 1970). As was stated in *United States v. Liles Construction Company,* 440 F.2d 474 (5th Cir. 1971):

> The statute provides a method by which those who supply subcontractors may protect themselves. The protection must be invoked within ninety days of the last delivery of goods. The reason for such a limitation is obvious. Contractors should not be compelled to wait around with their liabilities unknown or unsettled for an indefinite length of time, at the convenience of those who may wish to give notice of a claim .... If certain conditions precedent are met the contractor will thereby be made liable; by the same token the contractor is entitled to rely on the statute for protection against claims tardily filed.

*Id.* at 478.

The judgment of the superior court is affirmed.[3]

HAIRE, P. J., and EUBANK, J., concur.

---

**3.** Since we have determined that the complaint was not filed within the statutorily specified ninety day period, we need not determine whether the filing of a complaint and service of summons would constitute compliance with the notice requirements of A.R.S. § 34–223.