700 P.2d 499

**COAST TO COAST MANUFACTURING, a California limited partnership, Plaintiff/Appellee,**

v.

**CARNES CONSTRUCTION, INC., an Arizona corporation, and United Pacific Insurance Company, a Washington corporation, Defendants/Appellants.**

No. 2 CA–CIV 5209.

Court of Appeals of Arizona, Division 2, Department B.

March 18, 1985.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Mary O. Ameln, Tucson, for plaintiff/appellee.

Shimmel, Bishop & Gruender, P.C. by Kenneth C. Sundlof, Jr., Phoenix, for defendants/appellants.

## OPINION

LIVERMORE, Judge.

This is an appeal by the defendants, Carnes Construction, Inc. (Carnes) and its surety, United Pacific Insurance Company (United Pacific), from summary judgment granted in favor of the plaintiff, Coast to Coast Manufacturing (Coast). We have jurisdiction. A.R.S. § 12–2101.

This case involves an interpretation of Arizona's "Little Miller Act" (A.R.S. § 34–221 *et seq.*). The issue is whether a party contracting directly with a subcontractor to the general or prime contractor (under contract to a public entity) to provide specially designed materials is excused from the notice provisions of the statute because it had an implied contractual relationship with the general contractor.

On December 23, 1982, Carnes entered into a contract with Sunnyside Unified School District #12 (Sunnyside) for a project involving additions and alterations to three elementary schools in the district. Carnes was bonded by United Pacific for $810,000. Carnes subcontracted with Sunset Glass and Mirror (Sunset) to provide the window materials for the project. Sunset, in turn, contracted with Coast to manufacture customized window materials for the project. In an affidavit, Coast's president, William U. Almand, stated that he wrote to Sunset requesting that Sunset, the architect and the general contractor approve drawings prior to manufacture. He further stated that approval was confirmed by correspondence received on March 24, 1983. Coast began manufacturing the items on the following day. On April 22, 1983, window materials were shipped and Coast sent an invoice for $9,402 to Sunset. The last date on which Coast supplied materials to the project was June 15, 1983. In September 1983 Sunset filed a Chapter 11 bankruptcy petition. On October 18, 1983, Coast filed suit against Carnes (as general contractor and principal) and United Pacific, Carnes' surety under the payment bond.

In order "to protect those who furnish labor or materials in the construction setting," the Little Miller Act, like its federal counterpart, is to be "liberally construed." *Western Asbestos Co. v. TGK Construction Co.*, 121 Ariz. 388, 391, 590 P.2d 927, 930 (1979). But liberal construction cannot disregard limitations imposed by the legislature. *Greaig v. Parkwest Construction Co.*, 130 Ariz. 576, 580, 637 P.2d 1079, 1083 (App.1981). A.R.S. § 34–223(A) is designed to relieve a prime contractor of liability to sub-subcontractors or materialmen (who have no contractual relation to the prime contractor) after ninety days so that the prime contractor may safely pay his subcontractor without the fear of being subject to "double payments" to sub-subcontractors. The statute states:

"Every claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of § 34–222, and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond ... provided however that any such claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship express or implied with such contractor shall have a right of action upon such payment bond upon giving written notice to such contractor within ninety days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made ..."

It is uncontroverted that Carnes had no written notice of a claim by Coast until more than ninety days after Coast had last furnished material to the project. Coast had a direct contractual relationship with Carnes' subcontractor, Sunset. Coast, therefore, can only recover if it had some contractual relationship, express or implied, with Carnes. A.R.S. § 34–223(A); see also *Interform Co. v. Mitchell*, 575 F.2d 1270 (9th Cir.1978); *Fidelity and Deposit Co. v. Harris*, 360 F.2d 402, 409–10 (9th Cir.1966) (interpreting the parallel provision of the federal Miller Act).

It is conceded that there was no express contract between Coast and Carnes. Although most contracts are formed by an express written exchange of mutual promises, such "promises need not be express in order to create an enforceable contract." *Cook v. Cook*, 142 Ariz. 573, 691 P.2d 664 (1984). As put by *Cook:*

"Thus, two parties may by their course of conduct express their agreement, though no words are ever spoken. From their conduct alone the finder of fact can determine the existence of an agreement.

Restatement (Second) of Contracts § 4 [discussing express and implied contracts] ... Although isolated acts of joint participation ... may not suffice to create a contract, the fact finder may infer an exchange of promises, and the existence of the contract, from the entire course of conduct between the parties." Id. at 576, 691 P.2d at 667.

Coast points to three factors as indicating a contract implied in fact. First, the contract between Carnes and Sunnyside obligated Carnes to pay "one who furnishes material worked to a special design according to the Plans and Specifications of this work." Second, Coast was named as the manufacturer of the window materials in the project architect's specifications. Finally, Coast sought Carnes' approval of manufacturing drawings in a letter to Sunset.

■ The import of the contract between Carnes and Sunnyside, as regards subcontractors, was to free Sunnyside from any obligation "to pay or to see to the payment of any sums to any Subcontractor." There was no intent to benefit any third party to the contract. Even if there were, there is no evidence that Coast was aware of the language in the contract defining a subcontractor or that Coast relied on that language in filling Sunset's order. No implied-in-fact contract between Coast and Carnes can be inferred from the express language in the contract between Carnes and Sunnyside. See *Stratton v. Inspiration Consolidated Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984).

The architect's specifications mention Coast as the manufacturer of the "heavy intermediate steel windows" to be installed "where shown on [the] drawings." That Carnes might have knowledge of this reference is hardly evidence of any contractual agreement between Carnes and Coast.

Almand's affidavit asserts that:

"Contract drawings made by Coast to Coast Manufacturing were sent with letters of transmittal on February 10, February 18, and March 25, 1983. The letter dated February 10, 1983 requested that

Sunset Glass, the architect, and the general contractor (Defendant Carnes) approve the detail interpretation of the contract drawings prior to Coast to Coast manufacturing the windows to those special designs. Approval was confirmed in correspondence received March 24, 1983."

These transmittal letters from Coast, and all other correspondence (between December 20, 1982, and April 22, 1983) concerning the window materials entered into evidence by Coast, were addressed to Sunset or list Sunset as the customer or "rep." There is no indication of any direct communication between Coast and Carnes during the time in question. From the initial price quotation to the final shipping of the materials, there is no evidence of participation by Carnes in the relations between Sunset and Coast. No contractual relation between Carnes and Coast can be demonstrated on these facts.

Coast dealt directly with Sunset, Carnes' subcontractor. This is not unusual in the building trades. To find an implied contract between Coast and Carnes on these facts would defeat the purposes of § 34–223(A). Indeed, the facts in the case at bench are less compelling than the facts in *Harris*, supra, where the prime contractor's project manager dealt with a sub-subcontractor's foreman at the job site and, late in the project, had *one* direct transaction with the sub-subcontractor. The *Harris* court concluded:

"If this inference were permissible, every subcontractor or material supplier who received instructions, information or guidance from the prime contractor would be held to have a direct contract relationship with the prime contractor." 360 F.2d at 410.

In sum, the record reveals that Coast had no contract, express or implied, with Carnes. Its only contractual relationship regarding the project was with Sunset. Coast did not give Carnes the ninety-day notice required by A.R.S. § 34–223(A). The case is reversed and remanded to the trial court with instructions to enter sum-

mary judgment in favor of appellants Carnes and United Pacific. We award costs on appeal but not attorneys fees to Carnes.

HATHAWAY, P.J., and LACAGNINA, J., concur.