590 P.2d 927

**WESTERN ASBESTOS COMPANY, a corporation, Appellant,**

v.

**TGK CONSTRUCTION CO., INC., a corporation, Fireman's Fund Insurance Company, an insurance company, Appellees.**

No. 13929.

Supreme Court of Arizona,
In Division.

Feb. 8, 1979.

Bosco, Goldman & Kaplan, Ltd. by David S. Rosenthal, Phoenix, for appellant.

Carl W. Divelbiss, Phoenix, for appellees.

CAMERON, Chief Justice.

This is an appeal by the plaintiff Western Asbestos Company from an order granting a motion for summary judgment made by defendants T. G. K. Construction Company,

Inc., and its surety Fireman's Fund Insurance Company. We have jurisdiction of this appeal pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

We must answer only one question on appeal: Within the context of A.R.S. § 34–223(A), did appellant's letter of 5 August 1976, with the attached invoices, constitute sufficient statutory notice to the prime contractor?

The facts considered in a light most favorable to the party against whom the motion was granted are as follows. *Hall v. Motorists Ins. Corp.*, 109 Ariz. 334, 509 P.2d 604 (1973). Western Asbestos was a supplier of certain material used in the construction of the Tolleson Union High School near Phoenix, Arizona. T. G. K. was the general contractor on the project and Cal-Zona Glass and Metal Fabricators, Inc. (Cal-Zona) was the glass subcontractor. Cal-Zona ordered from Western Asbestos and there is no dispute that the material ordered and delivered was used in the construction of the high school.

Sometime in June of 1976, Cal-Zona ceased work on its subcontract and abandoned the project. T. G. K. assumed the role previously occupied by Cal-Zona by hiring the necessary workmen to complete the work Cal-Zona had subcontracted to perform. Although not conclusive, it appears that appellant's last shipment of materials to the job site was in late June of 1976 after T. G. K. had assumed responsibility for completing the work Cal-Zona had abandoned.

Pursuant to its contractual obligation to make progress payments, T. G. K., in mid-June 1976, paid to Cal-Zona the sum of $4,205.70. Although the record before this court does not indicate it, apparently there is still due and owing from T. G. K. to Cal-Zona a sum in excess of $2,000.00.

In early August of 1976, Western Asbestos mailed a letter to T. G. K. which stated in relevant part:

"Dear Sir.

"Per your telecon with our representative Michael Buell, we have enclosed copies of invoices for material supplied to Cal-Zona Glass for use on the Tolleson High School job on which you are the general contractor. If there is some way in which you can help us get payment for the material furnished, we would be very grateful. * * * "

Attached to this letter were copies of two invoices submitted by Western Asbestos to Cal-Zona, the first dated 19 May 1976, in the amount of $1,682.00. The second invoice was dated 30 June 1976 in the amount of $315.28 and showed shipment to Cal-Zona at the project site. This letter was followed by several telephone calls from Western Asbestos to T. G. K. relating to the payments owed appellant.

Western Asbestos' requests for payment were ignored, and on 8 February 1977, Western Asbestos filed suit in the Superior Court of Maricopa County against the subcontractor (Cal-Zona), the prime contractor (T. G. K.), and T. G. K.'s surety under A.R.S. § 32–1152 (Fireman's Fund Insurance Company).

Following cross motions for summary judgment by Western Asbestos and defendants T. G. K. and Fireman's Fund Insurance Company, the trial court entered an order dated 9 May 1977 finding the following:

"1. That the letter of August 5, 1976 from Western Asbestos Company to T. G. K. Construction, and the invoices thereto attached * * * do not constitute notice as required by A.R.S. § 34–223; and

"2. That there was not, and is not, any contractual relationship existing between the Plaintiff [Western Asbestos Co.] and the defendants T. G. K. Construction Co., Inc., and Fireman's Fund Insurance Co."

The court then granted defendants' motion for summary judgment and this appeal followed.

Western Asbestos bases its theory for recovery on A.R.S. § 34–223(A) which reads as follows:

"Payment bond provisions

"A. Every claimant who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is fur-

nished under the provisions of § 34–222, and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute such action to final judgment for the sum or sums justly due him, and have execution thereon, provided however that any such claimant having a direct contractual relationship with a subcontractor of the contractor furnishing such payment bond but no contractual relationship express or implied with such contractor shall have a right of action upon such payment bond upon giving written notice to such contractor within ninety days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied for whom the labor was done or performed. Such notice shall be served by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or at his residence."

Assuming that no contractual relationship existed between Western Asbestos, the materialman, and T. G. K., the prime contractor, as the trial court found, our inquiry must therefore focus upon whether the 5 August 1976 letter was adequate notice under the statute set forth above. In doing so, we note that our statute is modeled after the federal statute, the Miller Act, 40 U.S.C. § 270a, et seq., and decisions concerning notice under the federal statute are persuasive in interpreting our so-called "Little Miller Act."

■ The 5 August 1976 letter was not sent by registered or certified mail as directed by the statute, although there is no question that it was in fact received by T.

G. K. The United States Supreme Court considered a similar question in *Fleisher Engineering & Constr. Co. v. United States*, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940). The receipt of notice was not questioned in that case, but the contractors argued that even though notice had been received, it was not legally sufficient because of its failure to be sent by registered mail. The Supreme Court stated that the statutory registered mail provision

"was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown." 311 U.S. at 19, 61 S.Ct. at 83, 85 L.Ed. at 15.

In the instant case, it is admitted that the letter with attached invoices was, in fact, received by them at their offices within the 90 day period required by statute. Considering the purpose of the statute as stated in *Fleisher* above, we have no problem concluding that the failure by appellant to send the 5 August 1976 letter by registered mail was not fatal to the notice provision of the statute.

■ We next consider whether the letter and attached invoices stated

"with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied * * *." A.R.S. § 34–223(A).

The two invoices attached to Western Asbestos' 5 August 1976 letter, the first in the amount of $1,682.00 and the second for $315.28, clearly reveal the amount claimed. Additionally, the face of the letter indicates that the material was supplied to "Cal-Zona Glass for use on the Tolleson High School job * * *." We have no problem con-

cluding that the contents of the letter meet the statutory requirements of informing the contractor of the amount due and the name of the subcontractor.

But there is an additional requirement implicit in this statute and that is that "the writing must inform the prime contractor, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bill." *Bowden v. United States*, 239 F.2d 572, 577 (9th Cir. 1956), cert. denied 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957).

We believe that the case of *United States v. Freethy*, 469 F.2d 1348 (9th Cir. 1972), is dispositive of this issue. In that case a materialman wrote the prime contractor the following letter, quoted in material part:

"Gentlemen

"We wish to inform you that in the matter of the above mentioned job, Peter F. Giordano and Sons * * * shows a balance due us of $22,655.34 as of Sept. 25, 1968.

   *   *   *   *   *   *

"We would appreciate any help you may be able to give us in bringing this account up to date * * *."

This letter was followed by another two months later which showed an adjusted balance due of $18,524.59.

In writing for the 9th Circuit, Judge Trask pointed out that if the letter were only to seek the prime contractor's "moral assistance" in putting pressure on the subcontractor to make payment, there would have been less reason to give exact computations and no need for any follow-up letter stating the adjusted balance due.

In the instant case, Western Asbestos wrote a letter on 5 August 1976 containing invoices and closed with the passage "If there is some way in which you can help us get payment for the material furnished, we would be very grateful." This is indistinguishable from the closing passage interpreted in *Freethy*, supra. The only possible difference is that in *Freethy* there was a follow-up letter adjusting the balance due,

and in our case there were several follow-up telephone calls. We do not find this difference significant. It should be noted that some cases have held that it is not necessary to inform the contractor that they expect payment, one case stating:

"The statute does not require a demand for payment. It requires only written notice of the claim." *McWaters and Bartlett v. United States and American Surety Co. of N. Y.*, 272 F.2d 291, 295 (10th Cir. 1959).

Based on the above, we conclude that the 5 August letter from Western Asbestos to T. G. K. sufficiently advised T. G. K. of the party to whom material was furnished, the amounts involved, and that Western Asbestos was looking to T. G. K. for relief. We believe our finding in this regard is supported by the great weight of case law to the effect that this statute is remedial in nature and must be interpreted so as to effectuate its intent to protect those who furnish labor or materials in the construction setting. See, e. g., *United States v. Carter*, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957); *Fleisher v. United States*, supra; *Illinois Surety Co. v. John Davis Co.*, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917); *United States v. H. I. Lewis Constr. Co.*, 375 F.2d 194 (2nd Cir. 1967); *United States v. Peerless Casualty Co.*, 255 F.2d 137 (8th Cir. 1958).

Since we have declared that appellant's letter constituted adequate notice under A.R.S. § 34–223(A), it is ordered that the entry of summary judgment on behalf of defendants T. G. K. and Fireman's Fund Insurance Company be reversed and set aside and that the trial court proceed consistent with this opinion. The awarding of attorney's fees will be left up to the sound discretion of the trial judge. *Scafidi v. Puckett*, 118 Ariz. 589, 578 P.2d 1018 (App. 1978).

Reversed.

HAYS and GORDON, JJ., concur.