604 P.2d 261

NORMAN S. WRIGHT & CO., S. W., a corporation, Plaintiff-Appellant,

v.

Melvin J. SLAYSMAN, dba Mel Slaysman Construction Co.; United Pacific Ins. Company, a corporation; and Reliance Insurance Company, a corporation, Defendants-Appellees.

No. 1 CA–CIV 4274.

Court of Appeals of Arizona, Division 1, Department A.

July 12, 1979.

Rehearing Denied Aug. 17, 1979.

Review Granted Sept. 18, 1979.

Marks, Shea & Wilks by Richard B. Wilks, James H. Patterson, Phoenix, for plaintiff-appellant.

Henry, Wallach, Kimerer & LaVelle by Michael J. LaVelle, Michael C. Monson, Phoenix, for defendants-appellees.

## OPINION

SCHROEDER, Judge.

The appellant, Norman S. Wright & Co., was a supplier to a subcontractor on a public school construction project and was not paid for several thousand dollars worth of materials. He filed this action to recover against bonds posted by the general contractor. One bond was posted pursuant to A.R.S. § 34–222 *et seq.*, known as Arizona's "Little Miller Act." The other bond was the general contractor's license bond posted under A.R.S. § 32–1152.

Two issues are raised in this appeal from summary judgment entered in favor of the sureties. The first is whether appellant gave sufficient notice to the general contractor under the requirements of A.R.S. § 34–223(A) of the Little Miller Act. The second is whether there was a sufficiently direct relationship between the appellant and the general contractor to permit the appellant to pursue a remedy against the general contractor's license bond.

The general contractor on the construction project was appellee Melvin J. Slaysman, dba Mel Slaysman Construction Co. The other appellees are Slaysman's surety on the Little Miller Act bond, United Pacific Insurance Company, and the surety on the contractor's license bond, Reliance Insurance Company. Appellant supplied materials to the air conditioning subcontractor on the project, Southwest Air Conditioning, which is not a party to this action.

■ The specific question before us concerning the claim against the Little Miller Act bond is whether a letter written by the appellant on June 7, 1976, to Slaysman, constituted sufficient notice under A.R.S. § 34–223(A).[1] There is no question concerning the timeliness of the letter in question. Nor is there any question that it sets forth the amounts owed the appellant by the subcontractor. While it was not sent by registered mail, recent authority holds that that deficiency is not fatal so long as the letter actually reached the addressee as occurred in this case. *Fleisher Engineering & Construction Co. v. United States*, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12 (1940); *Western Asbestos Co. v. TGK Construction Company, Inc.*, 121 Ariz. 388, 590 P.2d 927 (1979). The question is whether the letter gave adequate notice to the general contractor that the appellant was looking to the general for payment.

Relevant Arizona case law interpreting our statute, and the federal law interpreting the federal statute from which our statute was derived, hold that the notice need not refer to the bond itself, and that it need not contain an express demand upon the general contractor. *Western Asbestos Co. v. TGK Construction Co., Inc., supra.* Even the most liberal applications of these statutes, however, require that there be at least some indication that the claimant is looking to the general contractor for payment, and that he is no longer relying solely upon the subcontractor. *See United States v. Freethy*, 469 F.2d 1348 (9th Cir. 1972), upon which the appellant strongly relies.

The facts surrounding the notice question in this case are not disputed. In the past the appellant had been paid by means of joint checks issued by the general contractor and the subcontractor. In early June of 1976, the appellant had not been paid for several invoices which had been submitted to Southwest. In response to a specific request from Slaysman, the general contractor, appellant wrote the letter in question with copies of the unpaid invoices attached and requested to be informed as to when another joint check would be forthcoming.[2] We find nothing in this letter which indicates that appellant was asking for anything from the general contractor other than payment in the usual course of its prior dealings with the subcontractor. It is similar to correspondence which was held insufficient under the federal act in *United States v. Skinner & Ruddock*, 164 F.Supp. 616 (E.D.S.C.1958). A claimant should at least indicate that he is looking for something more than continuation of the previous pattern of dealings. Wright's letter contains no such indication. The judgment in favor of the surety must be affirmed.

■ Wright also claims that he is entitled to proceed against Slaysman's general contractor's license bond, even though appellant had no direct contractual relationship with the general contractor. Appellant interprets the applicable statute, A.R.S. § 32–1152, as authorizing a claim against the general contractor's bond by

1. A.R.S. § 34–223(A) provides in pertinent part:
   Every claimant . . . shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit . . . upon giving written notice to such contractor within ninety days from the date on which such claimant performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or at his residence.

2. The body of the letter to Slaysman is as follows:

   June 7, 1976
   In accordance with instructions from you this morning, we are attaching hereto copies of invoices NOT PAID on the above subject job. We did receive joint check for $1,949.00 covering invoices listed and we did discuss a 'Partial' Lien Waiver on May 10th for this payment.
   We shall appreciate your advice as to when we may receive your joint check in the above amount for the invoices as submitted. Thank you for your cooperation and assistance.

**332**

anyone who supplies materials for the construction project. The statute, however, is not so phrased. It provides that a person who supplies material may proceed against a contractor's license bond for materials "used in the direct performance of a construction contract . . ." The materials furnished by appellant were used in the direct performance of Wright's contract with the subcontractor, Southwest, and not under any contract with Slaysman. All contractors, whether acting in the capacity of general contractors or subcontractors, are required to post a license bond. It is not disputed that appellant would have been able to proceed against Southwest's bond if it had not already been exhausted.

The only persons protected by a contractor's license bond are those who furnish materials or labor directly to a contractor or subcontractor. The scope of this protection is the same as is afforded by the Little Miller Act. *See Cecil Trucking, Inc. v. Tiffany Construction,* 123 Ariz. 31, 597 P.2d 184 (1979). Separate contractor license bonds, however, are posted by each contractor and subcontractor, while only the general contractor posts the Little Miller Act payment bond. The contractor license bond statute clearly permits each materialman to have recourse against the license bond of the contractor or subcontractor with whom he has dealt directly. It does not permit all materialmen to have recourse against the general contractor's license bond. The trial court properly so ruled.

Affirmed.

WREN, P. J., and DONOFRIO, J., concur.