812 P.2d 996

**CITIBANK (ARIZONA), an Arizona Banking Corporation, Plaintiff–Appellant,**

v.

**MILLER & SCHROEDER FINANCIAL, INC., a Minnesota Corporation; Wolfson & Frankel, a Law Partnership; Barry M. Wolfson and Deborah Wolfson, Husband and Wife; Martin S. Frankel and Colleen Frankel, Husband and Wife, Defendants–Appellees.**

**No. 1 CA–CV 88–439.**

Court of Appeals of Arizona,
Division 1, Department E.

Oct. 30, 1990.

Reconsideration Denied Jan. 4, 1991.

Review Denied June 25, 1991.

Lewis and Roca by Peter D. Baird and Patricia K. Norris, Phoenix, for plaintiff-appellant.

Bowman and Brooke by Jeffrey R. Brooke and Thomas M. Klein, Phoenix, and Drake & Rogosheske by W. Michael Drake, Judith A. Rogosheske and Carol I. Spresser, Minneapolis, Minn., for defendants-appellees Miller & Schroeder Financial, Inc.

Renaud, Cook, Videan, Geiger & Drury, P.A. by J. Gordon Cook, Phoenix, for defendants-appellees Wolfsons, Frankels, Wolfson & Frankel.

## OPINION

VOSS, Judge.

The trial court, characterizing defendants' motions to dismiss as motions for summary judgment, granted the motions,

finding that the complaint did not "present a justiciable controversy for the court to resolve" and that "there are no allegations made by the plaintiff on claims to which it has a protectable interest." As we find that there is a present legal dispute and the plaintiff possesses a legal interest in the resolution of the dispute, we reverse.

### Background

The essential facts are undisputed. The City of Anderson, California (City), issued $33.2 million in industrial development revenue bonds in May 1985, for the construction of multi-family housing. The developer was Phoenix Park, a California limited partnership. The general partner in Phoenix Park was Garland Bradley. The law firm of Wolfson & Frankel, consisting of Barry M. Wolfson and Martin S. Frankel, served as bond counsel, and Miller & Schroeder Financial, Inc., served as the underwriter remarketing agent for the project. Appellant United Bank served as the trustee.* The terms of the trust were set forth in an indenture agreement between the City and United Bank. A separate loan agreement describing Phoenix Park's obligations with respect to the use and disposition of the funds was executed by the City and Phoenix Park.

The bonds were initially issued on May 31, 1985. Miller & Schroeder purchased the bonds and resold them to a single institutional bondholder. Various closing costs of approximately $971,466 were paid from the sale proceeds and the remaining bond proceeds were deposited with United Bank in certain designated accounts pursuant to the terms of the indenture.

In May 1986, the bonds, as required by the documents, were remarketed by Miller & Schroeder and were sold to another institutional bondholder for $33.2 million, which allowed the original bondholder to be paid in full. This entitled Miller & Schroeder to a remarketing fee of $332,000, one percent of the face value of the bonds.

At about the same time, Bradley contacted Frankel and told him that he needed $285,000 to pay for project expenses.

In June 1986, Frankel wrote to United Bank explaining that Miller & Schroeder was entitled to a remarketing fee and requesting United Bank to transfer $1,190,-252.04 directly to Miller & Schroeder. Frankel stated that he was "attorney-in-fact" for the developer and that the remarketing fee was a proper charge for costs associated with the project. Bradley was unaware of this requisition to the extent it exceeded the $285,000 he had requested.

United Bank transferred $1,190,252.04 to Miller & Schroeder. When the funds were received, Miller & Schroeder retained its remarketing fee and remitted approximately $858,000 to Wolfson & Frankel for legal fees unrelated to the Anderson project. Wolfson & Frankel kept approximately $575,000 and gave approximately $285,000 to Phoenix Park; the amount Bradley originally requested.

In March 1987, legal counsel for United Bank and Bradley were informed that Miller & Schroeder's remarketing fee had only been $332,000, and that $858,000 had been remitted to Wolfson & Frankel for unrelated legal fees. Bradley asked Frankel to return the funds disbursed in excess of the actual marketing fee, and project costs; these funds were not paid back.

On approximately June 1, 1987, the bonds were redeemed and the bondholder paid in full. The $2,161,718.04 paid in project costs, closing costs, remarketing fees, and unrelated attorney's fees, was generated through surplus earning derived from investing the funds received through the two bond sales—arbitrage. The multi-family housing was never built.

United Bank subsequently filed a complaint in Maricopa County Superior Court, seeking the return of the $858,000 which was not distributed to Miller & Schroeder for remarketing fees, as well as attorney's fees. It asserted claims of fraud, unjust

---

* After entry of judgment, United Bank's name was changed to Citibank (Arizona), an Arizona banking corporation. We follow United Bank's lead and continue to refer to United Bank by its former name.

enrichment, money had and received, and civil conspiracy against both Wolfson & Frankel and Miller & Schroeder. Also named in the complaint were Bradley, Phoenix Park and the City of Anderson. United Bank requested trust instructions pursuant to A.R.S. § 14–7201, and a declaration as to the ownership and disposition of any funds retrieved.

Wolfson & Frankel and Miller & Schroeder filed separate motions to dismiss for lack of standing. Miller & Schroeder also moved to dismiss for lack of personal jurisdiction. In response, United Bank filed a motion to amend its complaint, primarily seeking to delete Bradley and Phoenix Park as parties. After hearing oral argument, the trial court treated the motions to dismiss as motions for summary judgment and dismissed the complaint. In reaching its conclusion the trial court stated by minute entry:

> THE COURT FINDS that the Complaint as alleged does not present a justiciable controversy for the Court to resolve. There are no allegations made by the Plaintiff on claims to which it has a protectable interest. THE COURT FINDS from the evidence presented that the bondholders involved have been paid and the City of Anderson, the other party to the trust, is not asserting a claim against Plaintiff. THE COURT FINDS that the allegations of the Complaint set forth the possibility of future damages but there are no allegations of a current dispute involving the Plaintiff and these Defendants.

Because the trial court found that United Bank's motion to amend the complaint did not cure the defect, it denied that motion. The trial court also denied Miller & Schroeder's motion to dismiss for lack of personal jurisdiction. Phoenix Park and Bradley were dismissed from the lawsuit pursuant to a Rule 41(a)(1), Arizona Rules of Civil Procedure, notice of dismissal filed by United Bank.

United Bank subsequently filed a motion to vacate and reconsider the dismissal order, which was denied after oral argument. The trial court denied Miller & Schroeder and Wolfson & Frankel's request for attorney's fees pursuant to A.R.S. § 12–341.01 and entered formal judgment on June 3, 1988. United Bank filed a timely notice of appeal.

*Discussion*

United Bank primarily argues on appeal that it has standing as trustee to bring this lawsuit and that there is a current dispute and therefore a justiciable controversy, even though no claim has been asserted against it. Specifically, it contends that as trustee, it had an interest in safeguarding and properly disbursing trust assets. This protectable interest, it claims, is expressly set forth in various sections of the trust indenture.

The appellees respond that United Bank does not have standing to seek recovery of the funds in question or assert any of its other claims, because no claim has been asserted against it for payment of excess funds, and United Bank has not shown an independent, current right to those funds. They also suggest that this litigation is in reality a request for an advisory opinion on a possible future controversy that has not yet arisen.

■ Summary judgment is proper only when there remains no genuine dispute as to any material fact, only one inference can be drawn from the undisputed material facts and based upon the undisputed material facts, the moving party is entitled to judgment as a matter of law. *Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982).

■ Resolution of this case rests on whether United Bank has standing and whether there is a justiciable controversy. Our supreme court has discussed standing as follows:

> We have previously determined that the question of standing in Arizona is not a constitutional mandate since we have no counterpart to the "case or controversy" requirement of the federal constitution. In addressing the question of standing, therefore, we are confronted only with questions of prudential or judicial re-

straint. We impose that restraint to insure that our courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries. Our court of appeals has explained that these considerations require at a minimum that each party possess an interest in the outcome.

*Armory Park Neighborhood Ass'n v. Episcopal Community Services in Arizona,* 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985) (citations omitted). The issue in Arizona is whether, given all the circumstances in the case, a party possesses an interest in the outcome of the litigation. *Id.*

■ The concept of justiciability requires a court to decline to hear a case if a dispute is so lacking and/or the parties are so situated that the court's determination would be merely advisory. Courts should not render "advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict." *Velasco v. Mallory,* 5 Ariz.App. 406, 410–11, 427 P.2d 540, 544–45 (App.1967). A declaratory judgment will not be rendered as to future rights in anticipation of an event which may never happen. *Klein v. Ronstadt,* 149 Ariz. 123, 716 P.2d 1060 (App.1986).

■ To determine whether United Bank has standing and whether this case represents a justiciable controversy, we turn to the indenture agreement. First, we must determine whether the trust was terminated, thereby ending United Bank's authority, if any, to bring suit under the indenture. Wolfson & Frankel and Miller & Schroeder assert that under section 9.01 of the indenture the trust terminated when the outstanding bonds were paid. Section 9.01 provides:

> **Release of Indenture.** If the issuer shall pay or cause to be paid and discharged all the outstanding Bonds ..., *and provision shall also be made for paying all other sums payable hereunder or under the Basic Documents,* then and in that event this Indenture ... shall cease, determine and become null and void....

(Emphasis added.)

The language of section 9.01 belies Wolfson & Frankel and Miller & Schroeder's assertion that the *sole* act required to terminate the trust was the payment of the outstanding bonds. Besides payment to the bondholders, section 9.01 also requires the payment of "all other sums payable" under the indenture. The trust terminates when the bonds are paid *and* when provision is made for any remaining sums payable. Necessary to a resolution of what sums remain payable is a determination of what funds are properly available for distribution. United Bank contends that hundreds of thousands of dollars were paid out through a false billing. The resolution of this factually disputed issue will determine what sums properly remain for distribution.

Article five of the trust indenture describes three "funds" for the deposit and distribution of money derived from the sale of the bonds. The funds included are a "bond fund" to provide for paying bond service charges, a "reserve fund" to provide the necessary reserve related to outstanding bonds, and a "construction fund" to provide for project costs.

There are a multitude of instructions regarding the deposit and distribution of money in the various funds. We need not go through a long and laborious examination of every detail. What is important is that article five and the indenture as a whole comprehensively address how money is to be deposited and distributed to the funds and likewise how money is to be paid out.

There is no doubt that the money in question was properly collected and deposited with United Bank pursuant to the indenture. There are, of course, no instructions which allow the alleged fraudulent diversion of funds. If what United Bank contends is true, that the diverted money was not a properly paid sum, it remains a sum payable under the indenture. Simply stated, money deposited with United Bank for certain designated purposes may not

have been distributed pursuant to the indenture and if so, it remains a sum payable under the indenture even though United Bank does not currently possess the money.

We cannot agree with Miller & Schroeder's assertion that the money in question was requisitioned under the terms of the indenture, and therefore is not a sum payable under the indenture.

We agree that the indenture allowed Bradley as the developer, to request funds consistent with the indenture, and that the indenture provided for the distribution of money for bond marketing fees from trust assets. However, United Bank maintains that the majority of the funds requested for disbursement by Frankel from United Bank were neither authorized by Bradley, nor in payment of legitimate marketing fees. As, for purposes of summary judgment review, we must view facts in a light favorable to appellant, *United Bank v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (1990), the requisition was made by an unauthorized party and was inconsistent with the terms of the indenture, at least with respect to much of the money involved.

■ We believe that under the facts alleged by United Bank, a payable sum as described in the trust indenture remains outstanding. This sum is represented by the money diverted from the trust and used for purposes outside the scope of the agreement. Questions concerning the return of this money for proper distribution are neither past questions already resolved, nor questions involving only future events. The money is presently absent from the trust and remains to be properly accounted for and distributed. We hold that this litigation involves a present dispute capable of resolution in the courts.

■ Having determined that this case involves a justiciable controversy, we must now consider whether United Bank has standing. Again, a party is appropriate if he or she possesses an interest in the outcome. *Armory Park*, 148 Ariz. at 6, 712 P.2d at 919.

United Bank argues that its interest stems from the fact that as trustee it has the duty to properly distribute money under the trust and it is harmed by its inability to distribute the funds in accordance with the indenture. United Bank states that because of this duty it is an appropriate party to retrieve and distribute the money under the terms of the indenture.

Of particular relevance here is section 5.02(B) of the indenture which states that "(t)he Trustee shall be responsible for the safekeeping and investment of the moneys held in the Construction Fund...." Additionally, article six generally describes the duties and responsibilities of the trustee. Section 6.01(M) states that all money collected by the trustee is to be held in trust and distributed as provided in the indenture.

These terms impose an affirmative duty on United Bank to keep safe and properly distribute all money collected. If United Bank has a duty to keep the money safe and distribute it properly, it also must have the ability to remedy situations which interfere with those duties. We believe this ability, which includes the right to maintain an action to recover fraudulently requisitioned funds, arises naturally as a part of the duties described.

Miller & Schroeder and Wolfson & Frankel argue that section 7.07 of the indenture restricts the trustee's authority to bring suits which benefit the bondholders, and since the bondholders have been paid, United Bank has no authority under the indenture to maintain this action.

Section 7.07 provides:

**Remedies Vested in Trustee.** All rights of action ... under this Indenture or under any of the Bonds may be enforced by the Trustee.... Any recovery of judgment shall be for the benefit of the holders of the outstanding Bonds, *subject to the provisions of this Indenture.*

(Emphasis added.)

The language "subject to the provisions of this Indenture" expressly allows the trustee to maintain actions related to the other duties described in the indenture.

We have already stated that the trustee's duties included safeguarding and distributing the trust proceeds in accord with the indenture. We believe section 7.07 allows the maintenance of a suit related to those duties.

Miller & Schroeder and Wolfson & Frankel also cite several cases in which a court held that a trustee lacked standing to bring suit. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972); *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988) and *National City Bank v. Coopers & Lybrand*, 409 N.W.2d 862 (Minn. App.1987). We find those cases inapposite.

Two of the cases cited, *Caplin* and *Williams*, involved federal standing issues related to a bankruptcy trustee. This is an Arizona state court case and does not involve federal jurisdictional considerations. In the third case, the court looking to the *terms of the trust before it*, determined when the indenture trustee's power ended. *National City Bank*, 409 N.W.2d at 866. Here we have determined that United Bank's power does not end until it accounts for all sums payable. Moreover, United Bank has asserted claims on its own behalf as trustee and not necessarily for the benefit of third party bondholders.

### Conclusion

This suit involves a justiciable controversy and United Bank has standing to bring the suit. We reverse the decision of the trial court and remand for proceedings consistent with this opinion. The issue of any future requested amendment to the complaint is reserved to the trial court.

■ The parties have requested attorney's fees. A.R.S. § 12–341.01 provides that, "In any contested action arising out of contract ... the court may award the successful party reasonable attorney's fees." A successful party includes those who achieve reversal of an unfavorable interim order when that order is central to the case and if the appeal process finally determines an issue of law sufficiently significant that the appeal may be considered a separate unit. *Wagenseller v. Scottsdale*

*Memorial Hospital*, 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985). Accordingly we grant attorney's fees to United Bank for those fees incurred on appeal. The amount is to be determined pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure. We grant Miller & Schroeder, Wolfson & Frankel, Barry Wolfson and Deborah Wolfson and Martin S. Frankel and Colleen Frankel five days after service of United Bank's statement to file objections.

EUBANK, P.J., and SHELLEY, J., concur.