854 P.2d 1185

**NORQUIP RENTAL CORPORATION, an Arizona corporation, Plaintiff–Appellee,**

v.

**SKY STEEL ERECTORS, INC., a South Dakota corporation; Insurance Company of the West, a California corporation; and Olson Erectors, Inc., an Arizona corporation, d/b/a Viking Steel, Defendants–Appellants.**

No. 1 CA–CV 91–0192.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 4, 1993.

As Corrected March 8, 1993.

Reconsideration Denied March 23, 1993.

Review Denied July 7, 1993.

Aspey, Watkins & Diesel by Jane Butler Juarez and Jack Dempsey, Flagstaff, for plaintiff-appellee.

Jennings, Kepner & Haug by Chad L. Schexnayder and Judy J. Lindemuth, Phoenix, for defendant-appellant Insurance Company of the West.

Edward J. Marko, Phoenix, for defendant-appellant Viking Steel.

## OPINION

CLABORNE, Judge.

Appellants Insurance Company of the West ("ICW") and Olson Erectors, Inc., d/b/a Viking Steel ("Viking") bring this appeal from a grant of a motion for summary judgment in favor of appellee Norquip Rental Corporation ("Norquip"). Appellants contend that the trial court erred in granting the motion for summary judgment because the payment bond upon which Norquip relied was a private bond and did not extend coverage to Norquip. We disagree and affirm.

### Facts and Procedural History

Sletten Construction Company ("Sletten") entered into a contract with the Flagstaff Unified School District ("school district") to build the Sinagua High School in Flagstaff, Arizona. Appellant Viking was a subcontractor to Sletten and appellant Sky Steel was a subcontractor to Viking. As a condition of its construction contract with the school district, Sletten was required to secure statutory payment and performance bonds pursuant to Ariz.Rev. Stat.Ann. ("A.R.S.") section 15–213 and Rule 7–2–1112 (the "Procurement Rule") of the Arizona State Board of Education in favor of the school district guaranteeing Sletten's performance under the construction contract. In addition, the school district required that *similar* bonds be secured from all major subcontractors. The purpose behind the double bonding provision was to protect "all persons supplying labor and material to the Contractor or its subcontractors for the performance of the

work provided for in the Contract." Viking, as a major subcontractor of Sletten, secured a subcontractor labor and materials payment bond pursuant to the double bonding provision in the prime contract, identifying ICW as surety, Viking as the principal and Sletten as the obligee. Norquip as the supplier of construction equipment to Sky Steel sought to recover under Viking's bond.

Sky Steel and Norquip entered into a rental agreement where Norquip provided construction equipment to Sky Steel for the use on the school project. Sky Steel returned the last piece of the equipment on June 27, 1989, but in a damaged state. The contract between Norquip and Sky Steel provided that:

> If the equipment and/or the vehicle rented hereunder is returned damaged, customer shall pay the company the actual cost of repair and customer shall pay the rental on the equipment and/or vehicle at the regular rental rate until the repairs are completed and the equipment and/or vehicle is again available for rental.

Consequently, Sky Steel's rental agreement with Norquip did not terminate until the damaged equipment was repaired and restored into Norquip's inventory, which occurred sometime between July 4 and July 17 of 1989.

Norquip never received payment from Sky Steel and filed suit against Sky Steel, Viking and ICW. The complaint contained three separate counts. Two counts were against Sky Steel for breach of contract and unjust enrichment. The third count was against Viking and ICW on a statutory payment bond claim. Norquip filed a motion for partial summary judgment against Viking and ICW on the statutory payment bond claim, and the court granted the motion in favor of Norquip.[1] The judgment awarded Norquip compensatory damages of $26,503.44 plus accrued interest at the rate of 18% interest, attorneys' fees of $2,944 and costs of $209.74. Viking and ICW brought this appeal claiming that Nor-

---

1. Although the motion is characterized as a partial motion for summary judgment, the lower court disposed of all claims and parties, finding that all defendants owed Norquip.

quip was not entitled to recover under the subcontract labor and material payment bond secured by Viking.

**Standard of Review**

 In reviewing the granting of a motion for summary judgment when no disputed issues of material fact exist, we will determine only whether the trial court correctly applied the law to the facts. *Long v. Buckley*, 129 Ariz. 141, 142, 629 P.2d 557, 558 (App.1981); *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990); *Citibank v. Miller & Schroeder Financial, Inc.*, 168 Ariz. 178, 812 P.2d 996 (App.1990), *review denied* (1990). In addition, we will review *de novo* issues of statutory interpretation, because these are issues of law. *Hartford Accident v. Federal Ins. Co.*, 172 Ariz. 104, 107, 834 P.2d 827, 830 (App.1992).

**Discussion**

This appeal turns on whether Viking's subcontractor labor and material payment bond, issued by ICW, is a statutory bond or a private bond. The liability of a surety on a statutory bond, including who can make a claim on the bond and the required procedure for making such a claim, is measured by the terms of the statute requiring the bond. *See* Rule 7–2–1112 of the Arizona Administrative Code of Rules and Regulations of the State Board of Education ("A.C.R.R."). If the bond is not governed by a particular statute, then it is a private

bond and the bond language must be examined to determine who can make a claim and the required procedure for making such a claim. *Robinson Explosives, Inc. v. Dalon Contracting Co.*, 132 Ga.App. 849, 209 S.E.2d 264, 266 (Ga.App:1974); *James D. Shea Co. v. Perini Corp.*, 2 Mass.App. 912, 321 N.E.2d 831, 832 (Mass.App.1975).

1. *Is this a statutory bond?*[2]

 The Arizona bonding statutes requiring performance and payment bonds on public construction projects were patterned after their federal counterpart, the Miller Act, and make up "The Arizona Little Miller Act." 40 U.S.C. § 270a *et seq.*; A.R.S. § 34–221, *et seq.*; *SCA Const. Supply v. Aetna Cas. and Sur.*, 157 Ariz. 64, 65, 754 P.2d 1339, 1340 (1988). *See also Advance Leasing & Crane v. Del E. Webb Corp.*, 117 Ariz. 451, 454, 573 P.2d 525, 528 (App. 1977).

In 1984 the legislature enacted the Arizona Procurement Code, replacing the Little Miller Act for *state* construction projects. *See* 1984 Ariz.Sess.Laws, Ch. 251, § 2 at 942 and § 17 at 964. The Procurement Code in A.R.S. section 41–2501(B) provides in pertinent part that "[t]his chapter applies to every expenditure of public monies ... by this state, acting through a state governmental unit ... under any contract." In addition, section 41–2501(C) provides that political subdivisions of the state, including school districts, may adopt

---

**2.** The legislature amended the Procurement Code in 1992. *See* A.R.S. § 41–2574 (Supp. 1992–93). This case is not affected by the amendment since the events took place before the amendment. The pertinent sections now read:

A. The following bonds or security are required and become binding on the parties on the execution of the contract if the value of a construction award exceeds the amount established by § 41–2535:

. . . .

2. A payment bond as required by title 34, chapter 2, article 2 in an amount equal to one hundred per cent of the price specified in the contract for the protection of all persons supplying labor or material to the contractor or its subcontractors for the performance of the work provided for in the contract. The conditions and provisions of the payment bond

shall follow the form required under § 34–222, subsection F.

. . . .

C. If the prime contract or specifications requires any persons supplying labor or materials in the prosecution of the work to furnish payment or performance bonds, the bonds shall be executed solely by a surety company or companies holding a certificate of authority to transact surety business in this state issued by the director of the department of insurance pursuant to title 20, chapter 2, article 1. Notwithstanding the provisions of any other statute, the bonds shall not be executed by an individual surety or sureties, even if the requirements of § 7–101 are satisfied.

Under the new amended statute it is clear that the bond at issue in this case would be a statutory bond under subsection C.

all or any part of the Procurement Code provisions. *See* A.R.S. § 15–101(14).

A.R.S. section 15–213(A) directs the State Board of Education to adopt rules governing procurement practices for school districts that are *consistent with* the practices set out in the Procurement Code, Title 41, chapter 23. A.R.S. section 15–213(A) provides:

The state board of education shall adopt rules prescribing procurement practices for all school districts in this state as follows:

1. The state board shall submit to the auditor general proposed rules consistent with the procurement practices prescribed in title 41, chapter 23, ... for all construction which exceeds fifteen thousand dollars in total cost....

The Arizona Board of Education has followed this mandate and adopted rules and regulations requiring general contractors to supply payment bonds on construction projects for school districts. A.C.R.R. R7–2–1111. It is Procurement Rule 7–2–1112 that describes who can make a claim on the payment bond and the notice requirements to make such a claim. Rule 7–2–1112 uses language identical to that found in A.R.S. section 41–2574 of the Procurement Code. Therefore, by virtue of A.R.S. sections 15–213(A) and 41–2501(C), the provisions of the Arizona State Board of Education Procurement Rule apply to the construction of the Sinagua High School. Accordingly the school district was under the mandate of Rule 7–2–1112 of the State Board of Education requiring payment and performance bonds *or other security* that would be binding on the parties on the execution of the contract.

Rule 7–2–1112 provides in pertinent part:
A. The following bonds or security are required and become binding on the parties on the execution of the contract if the value of a construction award exceeds the amount established by A.R.S. § 15–213(A):

. . . . .

2. A payment bond satisfactory to the school district, executed by a surety company authorized to do business in this state or otherwise secured in a manner satisfactory to the school district, for the protection of all persons supplying labor and material to the contractor or its subcontractors for the performance of the work provided for in the contract. The bond shall be in an amount equal to one hundred percent of the price specified in the contract.

. . . . .

C. This Section shall not be construed to limit the authority of the school district to require a performance bond *or other security in addition to* those bonds or in circumstances other than specified in Subsection (A) of this Section.

A.C.R.R. R7–2–1112 (emphasis added).

The purpose behind the statutes requiring surety bonds is to protect claimants supplying labor or materials to the contractor or subcontractors who carry out construction project work. *B.J. Cecil Trucking, Inc. v. Tiffany Const.*, 123 Ariz. 31, 33, 597 P.2d 184, 186 (App.1979). Specifically the purposes of such requirements are:

to protect laborers, materialmen and subcontractors for whom no mechanic's lien exist against a public work, to insure, or facilitate payment to persons who supply labor or material, to afford laborers and materialmen an additional means of receiving compensation, to encourage and increase the number of competitive bids from subcontractors and materialmen because of assurance of payment, and to substitute a bond for the security which materialmen and laborers might otherwise obtain under a mechanic's lien statute if the work were private.

72 C.J.S. Supplement Public Contracts § 46 (1975).

Thus, these statutes are remedial in nature and are interpreted so as to protect those who furnish labor or materials in the construction setting. *Western Asbestos Co. v. TGK Const. Co., Inc.*, 121 Ariz. 388, 391, 590 P.2d 927, 930 (1979). They are liberally construed in favor of laborers and

materialmen. *Columbia Group Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1103 (1986); *Coast to Coast Mfg. v. Carnes Const.*, 145 Ariz. 112, 700 P.2d 499 (1985).

Appellant contends that the language of the bond controls all rights and remedies and supersedes the Procurement Code. We disagree because we believe that the bond is controlled by the Procurement Rules set out in the Arizona Administrative Code of Rules and Regulations. Our courts have consistently held that the terms of the statute rather than the wording of the instrument measure the liability on statutory bonds; that we will treat as excess any additions to such bonds; and that we will read into the bond any omitted statutory provision. *Brown Wholesale Elec. v. Merchants Mut. Bond*, 148 Ariz. 90, 95, 713 P.2d 291, 296 (App.1984). *See, e.g., Royal Indemnity Co. of New York v. Business Factors, Inc.*, 96 Ariz. 165, 167, 393 P.2d 261, 262 (1964); *Porter v. Eyer*, 80 Ariz. 169, 172, 294 P.2d 661, 663 (1956). We hold that the Procurement Rules control the rights and remedies under the bond in this case.

■ Generally, a labor and material payment bond such as the one issued by ICW is a primary and direct obligation to laborers and materialmen without regard to the prime contract. *Federal Sur. Co. v. City of Staunton, Illinois, for Use of McWane Cast Iron Pipe Co.*, 29 F.2d 9 (1928), *cert. denied*, 279 U.S. 840, 49 S.Ct. 253, 73 L.Ed. 986 (1929).[3] Laborers and materialmen have a right to assume they are protected under the payment bond in accordance with the law. *California Elec. Supply Co. v. United Pac. Life Ins. Co.*, 38 Cal.Rptr. 479, 227 Cal.App.2d 138 (1964). It is clear then

from the intent of the statutory bond provisions and the double bonding requirement of the school district that the labor and material payment bond upon which Norquip relied falls within the purviews of Rule 7–2–1112 of the Administrative Code of Rules and Regulations of the State Board of Education.

Section C of Rule 7–2–1112 provides that the school district may require a performance bond or other security *in addition to* those bonds required by subsection A of the Procurement Rule. By requiring the double bonding, the school district was requiring additional security and providing for the applicability of the bond payment provisions contained in Rule 7–2–1112 to a lower tier of contractors.[4] In effect, Viking was acting as the general contractor, Sky Steel as the subcontractor and Norquip as the supplier to the subcontractor. We interpret the double bonding provision as protecting a lower tier of contractors because to interpret it otherwise would make the double bonding provision redundant.

■ The lower tier of contractors that the bond in this case applies to is Viking, Sky Steel and Norquip. We look to the statute requiring the bond to determine whether Norquip is the type of claimant who can recover on the statutory bond. *Brown* at 95, 713 P.2d at 296. In Arizona, those who furnish rental equipment are within the class of claimants who furnish labor and materials for purposes of the bonding statutes. *Arizona Gunite Builders, Inc. v. Continental Cas. Co.*, 105 Ariz. 99, 102, 459 P.2d 724, 727 (1969) (holding that the rental of equipment can be the subject of a claim against a surety bond under the statutory phrase "labor or mate-

---

3. We consider the persuasive decisions under the federal statute, the Miller Act, 40 U.S.C. section 270a *et seq*. *Paul Schoonover, Inc. v. Ram Const., Inc.*, 129 Ariz. 204, 207, 630 P.2d 27, 30 (1981).

4. In *Paul Schoonover*, the supreme court considered a case where a subcontractor brought an action to recover payment from monies due under a contract entered into between it and Ram Construction for the construction of an addition to a public school building. The bonding company and Ram Construction admitted

that the construction project was on a public school building. As a result, the supreme court read the statutory provisions designed to protect the claims of materialmen into the bond contract. *Paul Schoonover* at 205, 630 P.2d at 28. Similarly, ICW and Viking have admitted that the statutory bond provisions in A.R.S. section 41–2574 which are identical in nature to the provisions in the procurement rule apply to this case. We therefore will read into the terms of the bond issued by ICW the appropriate statutory provisions.

rials"). Since the Procurement Rule is intended to protect those claimants supplying labor or materials to the contractor *or subcontractor* (Sky Steel's position under Viking's bond) in the prosecution of the work on the project, Norquip falls within the group of protected claimants as supplier to Sky Steel. Additionally, Sky Steel was using the equipment it rented from Norquip to carry out its obligations under the construction project. This makes Norquip a supplier of materials for the performance of the work provided for in the contract with the school district. This is the type of situation that the bonds issued pursuant to Rule 7–2–1112 were intended to protect and Norquip as a supplier of construction equipment is protected under the bond. The next issue becomes whether Norquip complied with the Procurement Rule notice requirements before it filed its claim against ICW and Viking.

### 2. *Did Norquip meet the statutory notice requirement?*

■ As stated above, the required procedure for making a claim on the bond is measured by the terms of the rule requiring the bond. *Brown* at 95, 713 P.2d at 296; *United States Fidelity & Guaranty Co. v. St. Mary's Hospital of Tucson* 10 Ariz.App. 346, 348, 458 P.2d 966, 968 (App. 1969). Rule 7–2–1112(D) requires laborers or materialmen making a bond claim to provide a twenty-day preliminary notice and a ninety-day notice of nonpayment. A.C.R.R. R7–2–1112(D).

The first requirement is that "any person who has a contract with a subcontractor of the contractor, but no express or implied contract with the contractor furnishing the payment bond" shall serve a written preliminary twenty-day notice on the contractor, only, in accordance with the requirements of A.R.S. section 33–992.01, subsection (C), paragraphs (1), (2), (3) and (4) and subsection (D), (E) and (I). A reasonable person's reading of the plain language of the rule requires that notice be sent *only* to the general contractor, Sletten. Pursuant to the Procurement Rule, Norquip sent to the general contractor, Sletten, a written twenty-day notice. However, the bond upon which Norquip bases its claim was furnished by Viking, not Sletten. Although Sletten is the prime contractor and Viking is a subcontractor under the construction project, Viking is "acting" as a contractor for purposes of the bond it furnished. Consequently, the twenty-day notice sent to Sletten should have been sent to Viking, the subcontractor. This does not, however, preclude Norquip from recovering if we look to the policy behind the notice requirement.

The policy behind the statute's express requirement of notice to the contractor reflects a legislative interest in simplifying notice in complicated, multi-tiered construction projects such as this one. The February 1980, Arizona Bar Journal had this to say about this policy:

> Obviously the owner knows who the original contractor is. He hired him. As the owner's agent, the original contractor can inform the owner of the identities of each subcontractor he hires to work on a project. Discovering the identities of all the materialmen and third tier contractors is more problematical.

Irvine, *Mechanic's & Materialmen's Liens: Major Modifications in Arizona Law*, 15(5) Ariz.Bar J., 27, 28 (1980). In light of this complicated, multi-tiered construction project, Norquip fulfilled the twenty-day notice requirement as the plain language of the rule requires by sending the twenty-day notice to Sletten. Sletten in turn should have properly notified the owner. Norquip thereby complied with the rule's express mandate and intent by sending the twenty-day notice to Sletten.

■ The second requirement is the ninety-day notice of nonpayment. In order to perfect a claim against a bond the claimant must give written notice.

> to the contractor within ninety days from the date on which the last of the labor was performed or material was supplied by the person for whom the claim is made. The person shall state in the notice the amount claimed and the name of the party for whom the labor was performed or to whom the material was supplied. The notice shall be personally served or sent by registered mail, postage prepaid, in an envelope addressed to

the contractor at any place the contractor maintains an office or conducts business. A.C.R.R. R7–2–1112(D). Here, the ninety-day notice limitation began to run when the damaged equipment returned by Sky Steel was repaired and restored to Norquip's inventory, which was some time between July 4 and 17, 1989. The date the last piece of equipment was returned is not the day the ninety days begins to run because Sky Steel was responsible for the rental of the equipment until it was repaired and restored into inventory. Norquip sent a notice of claim to both Sletten and Viking within the ninety-day period by method of Federal Express mail which was received on September 28, 1989. Norquip complied with the ninety-day notice requirement. The question is whether Norquip complied with the proper method to send notice.

Rule 7–2–1112(D) states that the proper method for sending notice is by registered mail. While Norquip did not send notice by registered mail, Arizona has held that deficiency is not fatal so long as the letter actually reached the addressee. *Western Asbestos* at 389, 590 P.2d at 928; *Norman S. Wright & Co. v. Slaysman,* 124 Ariz. 330, 331, 604 P.2d 261, 262 (App.1979). The test is whether the letter sent by Norquip gave adequate notice to Sletten and Viking that it was looking to them for payment and was no longer relying solely on Sky Steel. *Id.* The statutorily required method is

> to assure receipt of the notice, not to make the described method mandatory so as to deny a right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. (Citation omitted).

*Western Asbestos* at 340, 590 P.2d at 929. Viking admits receiving the ninety-day notice of claim and only contends the method was improper. Thus, sending the ninety-day notice by Federal Express mail instead of by registered mail was not fatal under the statutory scheme.

3. *Attorney's Fees*

■ Appellants ICW and Viking and appellee Norquip both request an award of attorneys' fees on appeal if such fees are appropriate. This case, however, does not "arise out of contract" within the meaning of A.R.S. section 12–341.01. *S.K. Drywall v. Developer's Fin.,* 165 Ariz. 588, 799 P.2d 1362 (App.1990), *vacated in part,* 169 Ariz. 345, 819 P.2d 931 (1991); *Cashway Concrete & Materials v. Sanner Contracting Co.,* 158 Ariz. 81, 761 P.2d 155 (App.1988). Where a party seeks to enforce a statutory remedy as Norquip does here, the action does not arise out of contract pursuant to A.R.S. section 12–341.01. *S.K. Drywall* at 600–01, 799 P.2d at 1374–75; *Cashway* at 83, 761 P.2d at 157. Further, there are no provisions in the Procurement Code or State Board of Education Procurement Rules that authorize attorneys' fees for the prevailing party in a suit on a payment bond. We hold that neither party is entitled to an award of attorneys' fees.

### Conclusion

We hold that the bond issued by ICW on Viking's behalf is a statutory bond pursuant to Rule 7–2–1112 of the Administrative Code of Rules and Regulations of the State Board of Education and A.R.S. section 15–213. The double bond was required by the school district for the benefit of claimants supplying labor or materials under the contract who were not protected under the bond secured by the prime contractor Sletten. Norquip, as a supplier of rental equipment to the subcontractor Viking, was protected under the bond secured by Viking. We also find that the notice sent by Norquip to Sletten and Viking met the statutory notice requirements of Procurement Rule 7–2–1112.

Attorneys' fees will not be awarded to Norquip since this action does not arise out of contract pursuant to A.R.S. section 12–341.01.

We accordingly affirm the lower court.

GRANT, P.J., and CONTRERAS, J., concur.