3 P.3d 1129

**Billy J. MITCHELL, a single man, Plaintiff–Appellee Cross–Appellant,**

v.

**DILLARD DEPARTMENT STORES, INC., a Delaware corporation doing business in Arizona; and Rickey Hipp, Defendants–Appellants Cross–Appellees.**

**No. 1 CA–CV 98–0449.**

Court of Appeals of Arizona, Division 1, Department E.

Jan. 27, 2000.

---

**210**

Solomon, Relihan & Blake, P.C. By H. Micheal Wright and Kevin J. McAlonan, and Timbanard, Tolman & Kamper, LLP By J.

Robert Tolman, Phoenix, for Plaintiff–Appellee, Cross–Appellant.

Bryan Cave LLP By John Alan Doran and Sherin S. Vitro, Michelle H. Dillard, Phoenix, for Defendants–Appellants, Cross–Appellees.

## OPINION

GARBARINO, Judge.

¶ 1 The defendants, Dillard Department Stores, Inc. and Rickey Hipp, appeal from the jury verdict and resulting judgment in favor of Billy Mitchell on his claims arising from his detention at a Dillard's store by Rickey Hipp, an off-duty Phoenix police officer acting as a Dillard's security guard. The defendants challenge several of the trial court's rulings, as well as the size of the punitive damages award. Mitchell cross-appeals, contesting the trial court's preclusion of certain evidence and its denial of his requested sanctions based on his offer of judgment. For the reasons discussed below, we affirm the trial court's ruling on the color of law issue.

¶ 2 We publish only our decision relating to Dillard's appeal of the grant of summary judgment which was based on the trial court's conclusion that Hipp was acting under color of state law at the time he detained Mitchell. This portion of our decision meets the standards for publication set forth in Rule 28(b) of the Arizona Rules of Civil Appellate Procedure. We see no reason to publish the remainder of our analysis, which merely applies settled law to the facts.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 On January 2, 1992, Mitchell, a seventeen-year-old African–American male, was shopping at the Dillard's store in the Paradise Valley Mall. He attempted to purchase a $60 shirt and was waited upon by a Dillard's sales associate. Mitchell attempted to pay for the shirt with a $100 bill. The sales associate stated that she lacked sufficient change in her register, and Hipp, who was standing nearby, offered to get change for the bill from the credit department.

¶ 4 The sales associate testified that shortly after Hipp left, Mitchell began to act nervous and appeared anxious to leave the store. She telephoned Hipp and expressed her concern that Mitchell was acting suspiciously and she believed he may be attempting to pass a counterfeit bill. Hipp returned to the sales floor and began to watch Mitchell.

¶ 5 Mitchell eventually brought another shirt to the sales counter and told the sales associate to add it to his purchase. When the sales associate rang up the additional shirt, Mitchell looked in his wallet, discovered he did not have enough money, and told the sales associate that he was going to his car to get more money.

¶ 6 As Mitchell began to walk toward the store exit, Hipp placed his hand on Mitchell's shoulder and told Mitchell to come with him. Hipp grabbed Mitchell by the arm and took him up the escalator to the security office. At the top of the escalator, Hipp frisked Mitchell and handcuffed his hands behind his back. Because Hipp did not have the key to the security office, he escorted Mitchell, handcuffed, across the sales floor to obtain the key, then back to the security office.

¶ 7 While in the security office, Hipp asked Mitchell for identification. Mitchell gave Hipp his high school identification card. Hipp felt this form of identification was unreliable; therefore, he asked Mitchell for telephone numbers of his family and friends. Hipp eventually reached one of Mitchell's friends, who confirmed Mitchell's identity. Hipp also telephoned the Phoenix Police Department Identification Bureau and the Juvenile Correction Center seeking Mitchell's criminal record and history. Finding nothing, Hipp released Mitchell. The detention lasted approximately one hour.

¶ 8 The record reveals no justification for Hipp's belief that the $100 bill was counterfeit. Nor does it reveal that Mitchell gave Hipp any reason to handcuff him and parade him around the store. There is no evidence that even remotely supports Hipp's decision to take Mitchell into custody.

¶ 9 Mitchell sued Dillard's, Hipp, and the sales associate,[1] seeking compensatory and punitive damages for false imprisonment/false arrest, assault and battery, intentional infliction of emotional distress, and violation of his civil rights under 42 U.S.C. § 1983. The parties filed cross-motions for summary judgment on the various claims. The court denied Hipp's and Mitchell's cross-motions for summary judgment on Mitchell's § 1983 claim. The court held that Hipp was acting under color of state law, but found questions of material fact as to whether he had violated Mitchell's Fourth Amendment rights.

¶ 10 The court granted in part and denied in part Dillard's motion for summary judgment on Mitchell's § 1983 claim. The court granted the motion to the extent that Mitchell's claim was based on allegations that Dillard's had acted in concert with Hipp by hiring off-duty police officers with the intent of leading customers to believe that the Phoenix Police Department was guarding Dillard's.

¶ 11 The court denied the motion with regard to Mitchell's allegation that Dillard's had acted in concert with Hipp because it was deliberately indifferent to his training, and that lack of training was a cause of Mitchell's constitutional deprivation. The court concluded that there were questions of material fact on this issue.

¶ 12 The case proceeded to a jury trial. The jury returned a verdict in favor of Mitchell for $27,000 in compensatory damages and $430,000 in punitive damages. The trial court awarded Mitchell $155,237 in attorneys' fees pursuant to 42 U.S.C. § 1988, and entered judgment in accordance with the verdict. The defendants filed this appeal, and Mitchell cross-appealed. This Court has jurisdiction over this matter pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 12–2101(B) (1994).

## DISCUSSION

I. *The Trial Court Properly Concluded that Hipp was Acting Under Color of State Law at the Time He Detained Mitchell.*

 ¶ 13 The defendants challenge the trial court's grant of summary judgment which

---

1. The parties stipulated to dismiss the claims against the sales associate, and Dillard's admitted it was responsible for her actions under the doctrine of *respondeat superior*.

was based on the determination that Hipp was acting under color of state law at the time he detained Mitchell, and that therefore Mitchell was entitled to pursue his § 1983 claim. In order for Mitchell to prevail, he had to prove that Hipp was acting under color of state law and that Hipp deprived him of a federally guaranteed right. We review this ruling under a *de novo* standard. *See Norquip Rental Corp. v. Sky Steel Erectors, Inc.*, 175 Ariz. 199, 202, 854 P.2d 1185, 1188 (App.1993).

¶ 14 The cases addressing this issue—whether actions of off-duty police officers are actions under color of state law—have gone both ways. In reviewing a claim that an off-duty police officer was acting under color of law, we focus "on the nature of the specific acts being performed at the time of the incident." *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir.1995) (finding that an off-duty police officer's display of police uniform, badge, squad car, and gun indicated state authority and the ability to enforce it). We consider whether Officer Hipp "misused or abused his official power" and whether a nexus exists "between the victim, the improper conduct and [Hipp]'s performance of his official duties." *United States v. Causey*, 185 F.3d 407, 415 (5th Cir.1999) (holding that a police officer acted under color of state law when he used a police station, police car, and police radio while on- and off-duty to plan, execute, and cover up a murder).

¶ 15 Here, Dillard's employed only off-duty police officers as security personnel, specifically recognizing the parallels between police work and security work and expecting its security officers to utilize their police training in guarding its stores. Further, Dillard's required its security guards to wear their official police uniforms while working at its stores, and Hipp was so attired at the time he detained Mitchell. Besides being in full uniform, Hipp was prominently displaying his badge attesting to his authority. Hipp's admonition to Mitchell that he had to "come with me" and "not to do anything foolish" carried with it the threat that any resistance would be resistance to a lawful command. Hipp then frisked and handcuffed Mitchell to forestall the possibility of resis-

tance. In furtherance of his investigation, Hipp used his authority as a Phoenix police officer and the resources of the Phoenix Police Department to identify Mitchell and to ascertain if he had a criminal record.

¶ 16 The trial court correctly recognized that Hipp gave the impression that he was "imbued with police authority and act[ing] under color of state law." *See Pickrel*, 45 F.3d at 1118. Moreover, a clear nexus existed between Hipp's improper conduct, the advancement of his official duties, and Mitchell's resulting harm. *See Causey*, 185 F.3d at 415. In short, when it is clear that the "air of official authority pervaded the entire incident," it is generally appropriate to conclude that the off-duty police officer in question was acting under the color of state law. *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir.1991) (concluding that an off-duty deputy sheriff was acting under color of state law when he used his service revolver and persuaded on-duty deputies to assist him in running his wife's former lover out of town); *see also Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1427–30 (10th Cir.1984) (holding that an off-duty police officer working as a store security guard was acting under color of state law when he arrested a customer for shoplifting although he lacked probable cause).

## CONCLUSION

¶ 17 We affirm the trial court's ruling that Hipp was acting under color of state law at the time he detained Mitchell.

CONCURRING: THOMAS C. KLEINSCHMIDT, Judge, and RUDOLPH J. GERBER, Judge.